# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 28, 2022　　　　　Decided March 10, 2023

No. 22-7082

BROIDY CAPITAL MANAGEMENT LLC AND ELLIOTT BROIDY,
APPELLEES

v.

NICOLAS D. MUZIN, ET AL.,
APPELLEES

STATE OF QATAR,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00150)

———

*David M. Zionts* argued the cause for appellant. With him on the briefs was *Alexander A. Berengaut*.

*Martin Totaro*, Attorney, U.S. Department of Justice, argued the cause for *amicus curiae* United States in support of appellant. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Sharon Swingle*, Attorney.

2

*Daniel R. Benson* and *Daniel A. Saunders, pro hac vice*, argued the causes for appellees.  On the brief was *Henry B. Brownstein.*

Before: SRINIVASAN, *Chief Judge*, WILKINS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: As signatories to the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, T.I.A.S. No. 7502 (entered into force Dec. 13, 1972), and the Vienna Convention on Consular Relations, Apr. 24, 1963, T.I.A.S. No. 6820 (entered into force Dec. 14, 1969), the United States of America and Appellant State of Qatar are obliged "to hold 'inviolable' the premises of foreign missions[,] the persons of diplomatic agents," and, among other things, the archives and documents of foreign missions.  *Ignatiev v. United States*, 238 F.3d 464, 466 (D.C. Cir. 2001).  When a document of a foreign mission has the status of being "inviolable" under the Vienna Conventions, the "receiving State" is commonly understood to have "a duty to abstain from exercising any sovereign rights, in particular law enforcement rights, [with] respect" to the document.  EILEEN DENZA, DIPLOMATIC LAW: COMMENTARY ON THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS 110 (4th ed. 2016).

This appeal concerns a discovery dispute over certain documents in an ongoing case before the District Court. Defendants are non-mission third parties hired by Qatar as "contractors to support its foreign policy objective of maintaining U.S. Government support."  Appellant's Br. 1, 7. Plaintiffs brought this case against Defendants for allegedly helping Qatar hack Plaintiffs' computer systems and disseminate the hacked materials in a coordinated public

3

relations campaign against Plaintiffs. The District Court granted Plaintiffs' motion to compel Defendants to produce documents related to their work on Qatar's behalf. On appeal, Qatar contends that the disputed documents are inviolable under the Vienna Conventions and protected from disclosure under principles of international comity.

Qatar, however, is not a party to this suit, having chosen to only file statements of interest in the underlying District Court proceedings as *amicus curiae*. Under longstanding Supreme Court precedent and that of our Court, an appellant not named in the underlying suit must be bound by an underlying order and avail itself of applicable procedural rules in the related trial court proceedings to be recognized as a party that can properly bring an appeal. Otherwise, the appeal must be dismissed under the well-established rule that only parties can appeal an adverse judgment. For these reasons, and as further explained below, we must dismiss this appeal.

At the same time, we are cognizant of the Supreme Court's exhortation to "American courts . . . to demonstrate due respect for . . . any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). We recognize that both the parties and the District Court were operating in uncharted territory regarding how a foreign sovereign may invoke its treaty rights under the Vienna Conventions in our courts without forfeiting its foreign sovereign immunity. Accordingly, we remand with instructions to the District Court to afford Qatar the opportunity to intervene or take some other action to become a party in accordance with this opinion before enforcing the underlying discovery order.

4

**I.**

In January 2019, Plaintiffs Elliott Broidy and Broidy Capital Management, LLC brought this suit against Defendants Nicolas D. Muzin, Joseph Allaham, Gregory Howard, and Stonington Strategies LLC in the U.S. District Court for the District of Columbia.  Defendants are U.S.-based "political consultants, lobbyists, and public relations professionals" that Qatar hired "to support its foreign policy objective[s]" in the United States. Appellant's Br. 1, 7.  Plaintiffs' suit claims that Defendants "participated on Qatar's behalf in disseminating allegedly hacked materials concerning Broidy" due to his outspoken criticism of Qatar.  *Id.* at 10.

This case came before this Court in 2020 when Defendants appealed an order denying their motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  Defendants contended that they were "entitled to conduct-based foreign official immunity" given their relationship with Qatar or, in the alternative, immunity based on "a distinct doctrine that they call[ed] 'derivative' immunity." *Broidy Cap. Mgmt., LLC v. Muzin*, 12 F.4th 789, 794, 801 (D.C. Cir. 2021).  We rejected both theories and affirmed the decision denying Defendants' motion to dismiss. *Id.* at 804.  In so doing, our Court recognized Defendants' contention of an "indirect risk to Qatar" that Plaintiffs would "seek to gain access to Qatar's sensitive, diplomatic communications" through Plaintiffs' prosecution of the case. *Id.* (internal quotations omitted).  While the Court noted that this risk was not a sufficient reason to find immunity for Defendants, the Court added that it "trust[ed] the district court ha[d] the appropriate tools to protect Qatar's absolute FSIA 'immunity from trial and the attendant burdens of litigation.'" *Id.*

5

After the case was remanded, Qatar filed a "Notice of Interest" in the District Court "for the limited purpose of enabling it to monitor the proceedings to ensure that its sovereignty and immunities [were] respected in any discovery that [was] conducted." In its Notice of Interest, Qatar described itself as a "non-party to this action" and expressly provided that it was "not seek[ing] to intervene." Attorney David M. Zionts also filed a notice of appearance on behalf of Qatar. Plaintiffs objected to Qatar's notice and Mr. Zionts's appearance and asked that both be stricken, asserting that Qatar must formally intervene to make an appearance.

Soon after, Defendants filed an emergency motion seeking an order to prevent the release of sensitive information during discovery, including all information protected by the Vienna Conventions. Defendants claimed that Plaintiffs had stalled ongoing negotiations between the parties to propose a joint protective order and had proceeded to serve third-party subpoenas despite agreeing to not conduct third-party discovery during the negotiations. The terms of Defendants' proposed order largely matched those of a protective order entered in a prior case before the U.S. District Court for the Central District of California brought by Plaintiffs against Qatar, Defendants, and several others. A major difference, however, was that Defendants' proposed order here included the addition of an immunity protocol that would allow Qatar to review information provided by third parties prior to their production to check for potential privilege or inviolability issues and to redact documents accordingly. Defendants claimed this addition was necessary, in part, because Qatar was not a party in this case unlike in the California matter. Plaintiffs opposed the emergency motion and offered an alternative protective order that did not include the added immunity protocol.

6

The District Court eventually issued the protective order requested by Defendants, but it declined to adopt the proposed immunity protocol, holding that "Qatar may not receive or review ongoing discovery in this case . . . without moving to intervene pursuant to Federal Rule of Civil Procedure 24(b)." *Broidy Cap. Mgmt., LLC, v. Muzin*, No. 1:19-CV-150-DLF (D.D.C. Dec. 8, 2021) (minute order).  In support thereof, the District Court cited *In re Sealed Case (Medical Records)*, a case in which this Court emphasized that "courts of appeals have construed a district court's decision to permit a non-party to participate in a discovery dispute as the equivalent of authorizing intervention."  381 F.3d 1205, 1211 n.4 (D.C. Cir. 2004), *overruled in part on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  As to Qatar's notice and appearance, the District Court declined to strike them as Plaintiffs requested.  Instead, the District Court stated in the minute order that the court would take them under consideration as "the equivalent of amicus briefs."  The District Court further noted that "no pending motion require[d] addressing Qatar's exact status," and it declined to do so at that juncture.

Discovery was contentious from the start.  In their response to Plaintiffs' requests for production of documents related to Defendants' work with Qatar, Defendants objected throughout under the basis that many of the requested documents were privileged or otherwise protected under the Vienna Conventions and principles of international comity.  Plaintiffs subsequently filed a motion to compel discovery.  During the briefing on that motion, Qatar filed a statement of interest explaining why the documents should be shielded from discovery under its treaty rights and international comity interests.

7

The District Court granted Plaintiffs' motion to compel, holding that Defendants were not shielded from discovery based on "do[ing] business with [Qatar]." *Broidy Cap. Mgmt. LLC v. Muzin*, No. 1:19-CV-150-DLF, 2022 WL 1801031, at *6 (D.D.C. June 2, 2022). The District Court construed Article 24 of the Vienna Convention on Diplomatic Relations—which provides that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be"—as applying only to "documents that either belong to or are possessed by a mission, at the exclusion of those that have been delivered to their intended recipient." *Id.* Accordingly, and after discussing the "surrounding provisions" of the treaty, the District Court found that "the documents at issue are no longer 'of the mission,' as that phrase is used in Article 24." *Id.* The District Court also held that international comity "provides no barrier to discovery in this case." *Id.* at *9. Qatar appealed the District Court's order, and, on its motion, we ordered a stay pending appeal. *See Broidy Cap. Mgmt. LLC v. Muzin*, No. 22-7082, 2022 WL 2525300, at *1 (D.C. Cir. July 1, 2022) (per curiam).

The issues raised by Qatar on appeal are novel. Qatar contends that the District Court's interpretation of the Vienna Conventions is erroneous and asks this Court to clarify the scope of the Conventions' protections of documents created by, given to, or created with a mission's third-party contractors. Qatar also raises a separate argument that international comity principles require the protection of such documents.

As a nonparty, however, Qatar may not appeal the District Court's order.

## II.

It is a "well settled" rule that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse

8

judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam).  *See also Ex parte Cockcroft*, 104 U.S. 578, 578–79 (1881); *Bayard v. Lombard*, 50 U.S. 530, 551 (1850); *United States v. Seigel*, 168 F.2d 143, 144 n.2 (D.C. Cir. 1948) (collecting cases).  This rule "does not implicate the jurisdiction of the courts under Article III of the Constitution" "[n]or . . . the sorts of concerns that are ordinarily addressed as a matter of prudential standing."  *Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002).  Instead, it is a procedural requirement that appellate courts must address separately from issues of standing or jurisdiction.  *Id.* at 7.

"The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."  *Id.* at 10.  "Parties to the record include the original parties and those who have become parties by intervention, substitution, or third-party practice."  *United States v. LTV Corp.*, 746 F.2d 51, 53 (D.C. Cir. 1984) (per curiam).  Movants in trial proceedings have also historically been considered "parties" by the Supreme Court in the appeals of underlying "collateral orders to which they were parties, even though they were not named parties to . . . the underlying judgments."  *Devlin*, 536 U.S. at 16–17 (Scalia, J., dissenting) (emphasis omitted); *see also id.* at 7–8 (majority opinion).  "[T]he appellants in these cases were parties only in the sense that they were bound by the order from which they were seeking to appeal."  *Id.* at 8.

In *Devlin*, the Supreme Court highlighted the following examples of movants from prior Supreme Court cases who were not named in the underlying action yet were considered "parties" for purposes of appeal:  (1) a nonnamed party who appealed an "order finding [the] nonparty witness in contempt," *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988); (2) "a bidder for property at a

9

foreclosure sale, who was not a named party in the foreclosure action, [who] appeal[led] the refusal of a request he made during that action to compel the sale," *Devlin*, 536 U.S. at 7–8 (citing *Blossom v. Milwaukee & Chi. R.R. Co.*, 68 U.S. (1 Wall.) 655 (1863)); and (3) "a receiver, who was an officer of the court rather than a named party to the case, [allowed] to appeal from an order 'relating to the settlement of his accounts,'" *id.* at 8 (citing *Hinckley v. Gilman, Clinton & Springfield R.R. Co.*, 94 U.S. 467 (1876)).  *Devlin* expanded this list to include "nonnamed class members [who] object to a settlement at [a Rule 23] fairness hearing without first intervening." *Id.* at 14.  It so held despite the Supreme Court's prior holding in *Marino* that petitioners who "presented their objections to the District Court at [a] hearing" on the settlement of a class wide claim of employment discrimination were not parties after failing to intervene.  484 U.S. at 303–04.

The Supreme Court distinguished *Devlin* from *Marino* because while "the settlement affected [the *Marino* petitioners], the District Court's decision did not finally dispose of any right or claim they might have had because they were not members of the class." *Devlin*, 536 U.S. at 9.  It was this "sense of being bound by the settlement" that the *Devlin* majority found "most important to [the] case." *Id.* at 10.  The Supreme Court also pointed to "class action procedure," finding that since it "allows nonnamed class members to object to a settlement at the fairness hearing without first intervening . . . it should similarly allow them to appeal the District Court's decision to disregard their objections." *Id.* at 14 (internal citation omitted).

In sum, *Devlin* maintained the longstanding bright-line rule that only parties can appeal an adverse underlying order or judgment.  The Supreme Court clarified, however, that the label "party" does not include just those named on either side

10

of the "v." in a lawsuit, either from the original filing or amendment of a complaint, "intervention, substitution, or third-party practice." *LTV Corp.*, 746 F.2d at 53.  In addition, the label "party" applies also to those bound by an underlying order who participated in the trial court under "the applicability of various procedural rules . . . based on [the] context" of the underlying proceedings. *Devlin*, 536 U.S. at 10.  Accordingly, an unnamed class member who timely objects to the approval of a class settlement at the related fairness hearing made available under the Federal Rules of Civil Procedure is considered a proper "party" for purposes of appeal. *See id.* at 14; *see also* FED. R. CIV. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate.").

This Circuit has historically allowed nonnamed parties to appeal District Court orders that adversely "affect[] [their] interests," including under both the collateral order doctrine and the *Perlman* doctrine.  *In re Stone*, 940 F.3d 1332, 1340 (D.C. Cir. 2019).  In virtually all of these cases, however, the aggrieved sought to intervene, instituted an ancillary proceeding, or took some other action pursuant to available procedural rules prior to appealing the binding, adverse order of the trial court.  *See id.* at 1341 (collecting cases).

In *United States v. American Telephone & Telegraph Co.*, for example, a party that had filed an unsuccessful motion to intervene to assert a work product privilege in certain requested discovery sought to appeal a related interlocutory discovery order.  642 F.2d 1285, 1287 (D.C. Cir. 1980).  This Court reiterated that "[t]he general rule in this circuit is that 'one who is not a party to a record and judgment is not entitled to appeal therefrom.'"  *Id.* at 1290.  The panel noted, however, that the appellant could "appeal the interlocutory discovery order . . .

11

only if the district court's denial of [their motion to intervene] was erroneous and also appealable." *Id.* After "revers[ing] on the issue of intervention," the Court allowed the appellant "to intervene for the limited purpose of appealing the district court's discovery order" and found it had jurisdiction to address the merits of that order under the collateral order and *Perlman* doctrines. *Id.* at 1295–96, 1296 n.55. It was the appellant's "claim for intervention," even though it was originally denied, that allowed it to be considered a proper party for the appeal of the discovery order. *Id.* at 1290.

Likewise, in *United States v. Hubbard*, a "stranger[] to [an] [underlying] criminal case" was allowed to appeal a District Court order unsealing documents that the appellant had an asserted interest in keeping confidential. 650 F.2d 293, 307 (D.C. Cir. 1980). The appellant "chose to employ three [different] mechanisms" to seek relief: intervention, a motion for return of property accompanied by an application for a temporary restraining order to stop the release of the documents, and a petition for writ of mandamus to this Court. *Id.* at 308–09. Our Court held that a "motion to the court of trial is . . . appropriate for the purpose of the presumptive owner's assertion of interest in maintaining the confidentiality of documents . . . seized" in a criminal proceeding. *Id.* at 310–11. The Court found that the appellant's use of the three different approaches to seek relief had the effect of commencing an "ancillary, summary proceeding." *Id.* at 311. Since the appellant was "in fact heard on the merits" at the trial court through this ancillary proceeding, the Court found the appellant to be a proper party for the appeal. *Id.* at 312–13. Accordingly, someone who has properly instituted an ancillary proceeding to assert a right at risk in a separate action at the trial court may appeal a resulting adverse order in that action. *See id.*; *see also United States v. Barry*, No. 90-3149, 1990 WL 104925, at *1 (D.C. Cir. July 5, 1990) (collecting cases

12

regarding third-party appeals of gag orders challenged in proceedings ancillary to criminal matters). In discussing its jurisdiction, the Court analogized to the requirements of the collateral order doctrine and found that those requirements were satisfied. *Hubbard*, 650 F.2d at 314 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949)).

We addressed this issue also in *In re Sealed Case (Medical Records)*, a case in which the plaintiffs filed an unopposed motion "to compel production of the District of Columbia's 'complete files' on the appellant," "an adult male who [was] a committed ward" of the District. 381 F.3d at 1207–08. After the district court granted the motion, ordering the appellant's files to be produced to the plaintiffs, the "appellant's guardian ad litem . . . entered a special appearance to represent [him] in connection with the requests for his 'medical and ward files.'" *Id.* at 1208. The guardian ad litem "filed a motion for reconsideration and for a more extensive protective order pursuant to Federal Rule of Civil Procedure 26(c)" that the district Court subsequently denied. *Id.* At a subsequent hearing to clarify which documents should be produced, the guardian ad litem objected again to the documents' production "on the ground that some of the documents were privileged and confidential." *Id.* On appeal, our Court found that the appellant was a proper party to appeal. *Id.* at 1211 n.4. Importantly, the appellant was not just affected by the underlying discovery order but had participated also in the trial court under the applicable rule for that context, namely Rule 26. As we explained, the "district court's decision to permit [the nonparty appellant] to participate in [the] discovery dispute" through his motion practice and in the later hearing operated "as the equivalent of authorizing intervention." *Id.* The Court further held that it had jurisdiction over the appeal under both the collateral order and *Perlman* doctrines. *Id.* at 1209–11.

13

Accordingly, and as we have repeatedly held, "a person who was not a party to the record in the District Court and who made no effort to become a party there, can[not] bring the case into this court simply by noting an appeal." *Seigel*, 168 F.2d at 146. Qatar has failed to submit a case in this Circuit "in which a person who had taken no steps to become a party to the proceeding in the court below, was permitted to appeal." *Id.* at 145. Yet, it asks this Court to further expand the rule articulated in *Devlin* to include foreign sovereigns who, acting as nonparty *amicus curiae*, have submitted statements of interest asserting the inviolability of disputed discovery under the Vienna Conventions and principles of international comity. We reject this proposed expansion for two primary reasons.

First, the underlying District Court order does not "bind" Qatar. "Bind," as used in *Devlin*, is a term of art that means to "impose one or more legal duties on (a person or institution)." *Bind*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993) (equating the "the binding effect of [a] class settlement" with "'plain legal prejudice[]' as when 'the settlement strips the party of a legal claim or cause of action'"). Here, the underlying order does not require any action of Qatar or place any other legal duty on the country.

In *Devlin*, the "approval of the settlement . . . b[ound] petitioner as a member of the class," 536 U.S. at 9, because it "extinguishe[d] the claim, barring a subsequent action on that claim," *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). "Binding," therefore, describes the preclusive effect of an order such that it "amount[s] to a 'final decision of [petitioner's] right or claim.'" *Devlin*, 536 U.S. at 9. This preclusive effect does not apply, however, to those who are not parties to a suit, except under certain recognized exceptions. *See Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405,

14

1409 (D.C. Cir. 1985) ("Persons who are not parties to an action ordinarily are not bound by the judgment in the action."). None of the "recognized exceptions" to the general "rule against nonparty preclusion" appear to be present in this case, let alone raised on appeal. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). Qatar asserts an important interest that may be adversely impacted under the District Court's order to disclose this contested discovery. Yet, as a nonparty to the underlying suit, Qatar is not "bound" by that order in future suits. *See Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 810 (D.C. Cir. 2002); *Boorstin*, 751 F.2d at 1409. Accordingly, Qatar lacks the party status required to properly bring this appeal.

Second, Qatar has failed to demonstrate that it took action during the District Court proceedings under "the applicability of [any] procedural rules . . . . [in this] context.'" *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934 n.3 (2009) (quoting *Devlin*, 536 U.S. at 10). The fact that someone is bound by an underlying order or judgment "is not determinative" as to whether they will be recognized as a party who can bring an appeal; "nonparties may be bound by a judgment for a host of different reasons." *Eisenstein*, 556 U.S. at 936 (citing *Taylor*, 553 U.S. at 893–95). In *Devlin*, the nonnamed parties' ability to appeal without first intervening was predicated on the fairness hearing procedure in Rule 23 that allowed unnamed class members to object to a proposed class settlement. *Eisenstein*, 556 U.S. at 934 n.3 (citing *Devlin*, 536 U.S. at 10–11). There is no equivalent procedural vehicle in this case. The fact that Qatar "stand[s] in a relationship analogous to that of an amicus curiae" is unavailing. *Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*, 543 F.2d 224, 227 (D.C. Cir. 1976) (per curiam). Amici "d[o] not automatically acquire party status simply by being permitted to comment on the proposed final judgment or by filing its notice of appeal." *LTV Corp.*, 746 F.2d at 53.

15

There is also a practical reason for not expanding our precedent to allow nonparties in Qatar's position the right to appeal. "Rules of procedure," including the rule that only parties may appeal adverse judgments, "are not mere naked technicalities" to be ignored. *Seigel*, 168 F.2d at 146. Our trial courts must manage the "disposition of hundreds of cases" at any given time. *Id.* These rules afford our courts a "reasonable and known" structure that is "essential to the administration of justice." *Id.* It would wreak havoc, for example, if judges were encouraged to "sally forth each day looking for wrongs to right," taking it upon themselves to identify additional claims or inventive defenses never raised by the parties in the many cases brought before them. *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Further chaos would ensue if courts were required to address the arguments of every nonparty with an interest in ongoing litigation before the court. That is why we have the "principle of party presentation," which requires that our courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The bright-line rule that only parties may appeal an adverse judgment provides similar order to our administration of justice and the "meticulous disposition of the conflicts" brought before our courts. *Seigel*, 168 F.2d at 146. Just as courts are required to follow these procedural rules, "[l]itigants must be required to cooperate in the efficient disposition of their cases." *Id.*

As a nonparty, Qatar is not bound by the underlying order. Qatar also chose to not avail itself of any applicable procedural mechanism—such as intervention—to become a party to the underlying suit or to the proceedings related to the discovery order challenged on appeal. Since no party to the underlying matter has brought this appeal, it is not properly before us.

16

**III.**

Qatar asserts that it should not be required to become a party to bring this appeal because such a holding would require it "to risk a claim that it had surrendered its immunity from suit in order to assert its privileges and immunities in discovery." Appellant's Br. 22.

Our "courts of appeals have wide discretion to adopt and apply 'procedural rules governing the management of litigation.'" *Joseph v. United States*, 135 S. Ct. 705, 705 (2014) (Kagan, J., respecting the denial of certiorari) (quoting *Thomas v. Arn*, 474 U.S. 140, 146 (1985)). The adoption of these rules must "represent reasoned exercises of the courts' authority." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 244 (1993). At the same time, these procedural rules, like the one at issue here, must yield if they "conflict[] with constitutional or statutory provisions." *Thomas*, 474 U.S. at 148. Accordingly, the rule that only a party may appeal an adverse judgment would be "invalid" in this case if, as Qatar contends, its application would conflict with the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611. *Thomas*, 474 U.S. at 148.

Immunity is a threshold issue which the court has an independent obligation to address. *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584 (D.C. Cir. 2020) (recognizing that immunity assertions should be resolved "as early in the litigation as possible"); *In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998) (noting that courts should "look beyond the pleadings" when addressing foreign sovereign immunity). The FSIA codifies historic international law principles weighing the "careful balance between respecting the immunity historically afforded to foreign sovereigns and holding them accountable, in certain

17

circumstances, for their actions." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018). The statute provides that foreign states are "presumptively immune from the jurisdiction of United States courts[,] unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). These exceptions "provide[] the sole basis for obtaining jurisdiction over a foreign state in federal court." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir. 2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)).

Qatar expresses concerns "that, if it intervened, Broidy would sue Qatar directly, invoking the [FSIA]'s counterclaim exception to immunity (which applies in some circumstances where 'a foreign state intervenes') or the waiver exception (which permits waivers 'by implication')." Appellant's Br. 20–21 (citing 28 U.S.C. §§ 1607, 1605(a)(1)). Under our precedent, Qatar's hesitation to intervene—while understandable given the immunity protections at stake—is unfounded.

Under the FSIA's counterclaim exception, "'[i]n any action brought by a foreign state, or in which a foreign state intervenes,' the 'foreign state shall not be accorded immunity with respect to any counterclaim' fitting within three defined categories." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 10 (D.C. Cir. 2021) (quoting 28 U.S.C. § 1607). These categories include counterclaims: (1) "for which a foreign state would not be entitled to immunity under section 1605 or 1605A of [the FSIA] had such claim been brought in a separate action against the foreign state"; (2) "arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state"; or (3) "to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state." 28 U.S.C. § 1607. "Consistent with the

ordinary understanding of a counterclaim, the counterclaim exception applies only when there is an 'action brought by a foreign state, or in which a foreign state intervenes,' and when the ostensible 'counterclaim' is brought 'in' that same action." *Khochinsky*, 1 F.4th at 10.

The FSIA also provides that "a foreign state will not be 'immune from jurisdiction' in any case 'in which the foreign state has waived its immunity either explicitly or by implication.'" *Id.* at 8 (cleaned up) (quoting 28 U.S.C. § 1605(a)(1)). "A foreign state will not be found to have explicitly waived its immunity unless it has clearly and unambiguously done so." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 691 (D.C. Cir. 2022) (cleaned up). A waiver "by implication" is not defined in the FSIA, but it has been construed "narrowly." *Khochinsky*, 1 F.4th at 8. This Circuit requires "that the foreign state have intended to waive its sovereign immunity." *Id.* (emphasis omitted). The "requisite evidence of a foreign state's intent" to establish waiver by implication has been found in "only three circumstances: (i) the state's 'executing a contract containing a choice-of-law clause designating the laws of the United States as applicable'; (ii) the state's 'filing a responsive pleading without asserting sovereign immunity'; or (iii) the state's 'agreeing to submit a dispute to arbitration in the United States.'" *Id.* at 8–9. Courts are loathe to "stray beyond these examples." *Id.* at 9.

A review of our precedent, and that of other courts, demonstrates that nonparties may file a motion for limited intervention, while expressly reserving their rights. *See United States v. Brit. Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1240 (D.C. Cir. 2006) (noting that the district court granted limited intervention "only as to [intervenor's] possible privilege in documents"); *Fund For Animals, Inc. v. Norton*,

19

322 F.3d 728, 737 n.11 (D.C. Cir. 2003) (quoting FED. R. CIV. P. 24(a) advisory committee's note on 1966 amendment) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."); *see also United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013) (collecting cases) ("Rule 24 also provides for limited-in-scope intervention."); *DataTreasury Corp. v. Elec. Data Sys. Corp.*, No. 3:02-CV-2642-K, 2003 WL 22019528, at *1 (N.D. Tex. Aug. 26, 2003) (granting limited intervention to movant "for the sole purpose of protecting its alleged fee interest"). Qatar, similarly, could have filed a motion for limited intervention under Federal Rule of Civil Procedure 24 while expressly reserving its sovereign immunity protections, and the FSIA exceptions it referenced "would not in fact apply." Appellant's Br. 21.

Under a plain reading of the statute, a foreign sovereign must assert a claim for the FSIA's counterclaim exception to apply. A counterclaim is defined as "[a] claim for relief asserted against an opposing party after an original claim has been made." *Counterclaim*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Khochinsky*, 1 F.4th at 10 (citing FED. R. CIV. P. 13 and 28 U.S.C. § 1607). A motion to intervene for the limited purpose of asserting its privileges under the Vienna Conventions and international comity would not, in and of itself, bring Qatar into the ambit of the counterclaim exception, because filing a motion to intervene solely to file a motion to quash or strike does not assert a "claim for relief" or raise a "claim" within the meaning of 28 U.S.C. § 1607. *See, e.g.*, *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 656 (9th Cir. 1996), *as amended on denial of reh'g* (Aug. 28, 1996) (finding intervention alone, absent filing a claim, does not constitute an exception to immunity under the FSIA). Moreover, Qatar could have

20

requested that the District Court specifically "limit[] [its] intervention" to "bar[] [Qatar] from" bringing claims to prevent "undu[e] delay or prejudice [to] the adjudication" of Plaintiffs' claims. *Fund For Animals, Inc.*, 322 F.3d at 737 n.11. For these reasons, the counterclaim exception is inapplicable.

The waiver exception would also not apply if Qatar explicitly stated it was not waiving FSIA immunity as it has done throughout this suit. In *Ex parte Republic of Peru*, Peru filed a motion to intervene that expressly reserved its rights to sovereign immunity. 318 U.S. 578, 581 (1943). The country also participated in discovery in the case by taking a deposition. *Id.* at 582. The Supreme Court held that none of those actions waived sovereign immunity where Peru consistently stated that no such waiver was intended as it took each action. *Id.* at 589; *see also Flota Maritima Browning De Cuba, Sociadad Anonima v. Motor Vessel Ciudad De La Habana*, 335 F.2d 619, 625 (4th Cir. 1964) ("[T]here is no waiver when a foreign power . . . appears specially for the purpose of asserting her immunity.").

Even though the FSIA was enacted after *Ex parte Republic of Peru*, the Supreme Court's holding that no waiver results from limited intervention still has force, especially given the "narrow[]" grounds for waiver outlined by Congress in the FSIA. *Khochinsky*, 1 F.4th at 8. Qatar has "consistently declared its reliance on [foreign sovereign] immunity" throughout this litigation. *Ex parte Republic of Peru*, 318 U.S. at 589. Filing a motion to intervene, like other litigation conduct such as filing motions to dismiss, to stay proceedings, or to object to discovery, are not responsive pleadings that result in waiver of immunity. *See Delta Foods Inc. v. Republic of Ghana*, 265 F.3d 1068, 1069–70 (D.C. Cir. 2001) (holding foreign sovereign immunity is not waived based on motions "to dismiss or for summary judgment on the grounds of forum non

21

conveniens, comity, and ripeness" even without expressly "assert[ing] sovereign immunity"); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (finding no implicit waiver when foreign nation "did not respond substantively to any of the averments in the complaint or pose any defenses to the claims" but "merely argued that the action should proceed in another forum"); *see also In re Republic of Philippines*, 309 F.3d 1143, 1151 (9th Cir. 2002) (citing FED. R. CIV. P. 12(b)) (finding no waiver of sovereign immunity because "[a] motion to dismiss . . . is not a responsive pleading."); *Haven v. Polska*, 215 F.3d 727, 733 (7th Cir. 2000) (holding foreign nation's "letter objecting to service of process did not waive sovereign immunity"); *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1291 n.24 (11th Cir. 1999) (finding no implicit waiver despite foreign nation's "participation in the litigation, such as removing the case to federal court, filing statements of position, and joining [party's] *forum non conveniens* motion"); *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 290 (5th Cir. 1993) (holding foreign sovereign immunity not waived despite participation in lawsuit including filing a motion to dismiss and joining in discovery motions to "fully develop the facts relating to [an] immunity claim"); *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) ("[W]e refuse to hold that the filing of a variety of motions, including a motion to dismiss, automatically waives the defense [of foreign sovereign immunity].").

Arguably, Qatar could file a responsive pleading in the context of its limited intervention, but, under this Court's precedent, mere intervention would not "standing alone, 'fit in th[e] selective company' of implied waiver cases" given Qatar's assertion of its immunity. *Wye Oak Tech.*, 24 F.4th at 697 (finding "trial participation and post-trial argument" insufficient to establish an implied waiver of foreign sovereign

22

immunity); *see also Est. of Fakhoury v. Islamic Republic of Iran*, Civ. Action No. 21-1218 (JDB), 2022 WL 3355799, at *6 (D.D.C. Aug. 15, 2022) (collecting cases) ("[A] motion to intervene for a limited purpose does not fall within any of the three circumstances the D.C. Circuit has recognized to constitute implied waivers of sovereign immunity").  Since a discovery motion would constitute neither a contract nor an arbitration agreement, the other two "circumstances" of waiver also do not apply in the context of a request for limited intervention.

If it were the case that Qatar's limited intervention would constitute a waiver of its foreign sovereign immunity, our Court would be obligated to exempt Qatar from the procedural requirement that only parties can appeal.  *See Thomas*, 474 U.S. at 148.  However, that is not the case.  Qatar could have, and should have, sought to vindicate the rights it asserts under the Vienna Conventions and principles of international comity by filing a motion pursuant to one of the "various procedural rules [applicable to this] context," *Devlin*, 536 U.S. at 10, including, for example, filing a motion for limited intervention, *see* FED. R. CIV. P. 24(b)(1)(A), in order to seek a protective order or some other related relief, *see* FED. R. CIV. P. 26(c).  *Cf. League of Women Voters of United States v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020) (noting that nonparties may intervene under Federal Rule of Civil Procedure 24(b) to access documents "shielded from public view either by seal or by a protective order"); *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (same); *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (noting that nonparties may seek to modify a protective order through permissive intervention); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988) (collecting cases in which nonparty movants intervened to challenge "court closures and protective

23

orders"). Since it failed to do so, Qatar is not a party and, thus, cannot bring this appeal.

**IV.**

*Marino* confirmed a long-established and fundamental, bright-line rule: "[O]nly parties to a lawsuit … may appeal an adverse judgment." 484 U.S. at 304. *Devlin* clarified that "parties" includes: (1) named parties to an action; (2) those who "properly become parties" through intervention, substitution, or third-party practice; and (3) those who are not named in the underlying action but are both bound by an adverse order and, through applicable procedural rules, seek relief in the trial court proceedings related to the adverse order. *Devlin*, 536 U.S. at 7–10. Absent some "conflict[ing] . . . constitutional or statutory provision[]," this procedural rule must be applied. *Thomas*, 474 U.S. at 148.

Qatar could have moved for limited intervention under Federal Rule of Civil Procedure 24 to vindicate its treaty rights or protections under international comity without forfeiting its foreign sovereign immunity. If Qatar had sought to intervene with its immunity intact, and the District Court denied intervention thinking immunity had to be waived for Qatar to intervene, *see, e.g.*, *Jota v. Texaco Inc.*, 157 F.3d 153, 163 (2d Cir. 1998) (advising Ecuador that it must waive sovereign immunity to intervene, which Ecuador declined to do), Qatar could have appealed that order, *see League of Women Voters*, 963 F.3d at 134 (holding that the collateral-order doctrine enables appellate courts to review "a district court order denying a motion to permissibly intervene"); *Alternative Rsch. & Dev. Found. v. Veneman*, 262 F.3d 406, 409 (D.C. Cir. 2001) ("[T]he denial of intervention as of right is an appealable, final order regardless of the merits of the claim for intervention as of right."). At a minimum, Qatar could have

24

moved to intervene at the District Court for the limited purpose of appealing the adverse discovery order, recognizing that any argument not raised by a party would not be preserved on appeal. *Cf. Tachiona v. United States*, 386 F.3d 205, 209, 211 (2d Cir. 2004) (finding the United States was a "proper" party for purposes of appeal after it submitted a "suggestion of immunity" under 28 U.S.C. § 517 in the underlying district court proceeding and filed a motion for limited intervention to appeal an adverse discovery order); *see also Eldred v. Ashcroft*, 255 F.3d 849, 851 (D.C. Cir. 2001) (en banc) (collecting cases) ("[W]e would still not reach what would then be the supporting argument of the amicus"). The denial of that motion would then also have been appealable. *See Veneman*, 262 F.3d at 409; *League of Women Voters*, 963 F.3d at 134.

Having failed to intervene or take some other available action that would confer party status at the District Court, Qatar is not a "party" under *Devlin* and, thus, cannot appeal the District Court's order granting Plaintiffs' motion to compel discovery. We do not reach the question of whether the District Court's order is itself immediately appealable under the collateral order doctrine or the *Perlman* doctrine. However, Qatar's "fail[ure] to avail [itself] of [these] adequate alternative remedies" by at least attempting to become a party means "we lack jurisdiction to grant" its alternative request to construe its notice of appeal as a petition for mandamus. *In re Stone*, 940 F.3d at 1334.

Nevertheless, through its statements of interests filed at the District Court, Qatar has called attention to its "coordinate interest in the litigation" and asked our courts to "exercise special vigilance to protect [it] from the danger" of losing its privileges and immunities through the underlying discovery dispute. *Aerospatiale*, 482 U.S. at 546. Accordingly, and in "tak[ing] care to demonstrate due respect for [this] special

25

problem confronted by [Qatar]," *id.*, we instruct the District Court to provide Qatar the opportunity to timely intervene to assert its rights under the Vienna Conventions and international comity, or file some other appropriate motion to become a party to this litigation, in light of this opinion.

We therefore dismiss this appeal and remand the case for further proceedings consistent with this opinion.

*So ordered.*